**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **EDWARD CALLAN AND** | * | **CIVIL ACTION** |
| **JVF FOOD, L.L.C. d/b/a FORTISSIMO** | * | |
| | * | **NO. 07-4436** |
| **VERSUS** | * | |
| | * | **SECTION "R"** |
| **HANOVER INSURANCE COMPANY** | * | |
| | * | **MAGISTRATE (4)** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANT'S PROPOSED JURY INSTRUCTIONS

In accordance with the Court's order of January 29, 2009 (Record Doc. 29), Defendant Hanover Insurance Company ("Hanover") hereby submits the enclosed proposed jury instructions, which Hanover respectfully requests that the Court give to the jury at the conclusion of evidence at the trial of this case. Hanover reserves the right to amend or supplement its proposed instructions based on the evidence presented at trial.

**HANOVER'S PROPOSED JURY INSTRUCTION NO. 1**

**BIAS – CORPORATE PARTY INVOLVED**

Do not let bias, prejudice or sympathy play any part in your deliberations.  The Plaintiff in this case are corporations and limited liability companies.  The Defendant in this case is an insurance company.  Corporations, limited liability companies, and insurance companies, as well as all other persons, are equal before the law and must be treated as equals in a court of justice. The fact that the parties in this case are legal entities and not individuals should not be a factor in your decision.  In a court of law, corporations and insurance companies are entitled to be treated in the same manner as individuals.

**Authority:**  Fifth Circuit Pattern Jury Instructions § 2.13.

## HANOVER'S PROPOSED JURY INSTRUCTION NO. 2

## CREDIBILITY OF WITNESSES

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You are the sole judges of the credibility of the witnesses. "Credibility" means whether a witness is worthy of belief.  You may believe everything a witness says or only part of it or none of it.   In deciding what to believe, you may consider a number of factors, including the following:

(1) the opportunity and ability of the witness to see or hear or know the things the witness testifies to;

(2) the quality of the witness's understanding and memory;

(3) the witness's manner while testifying;

(4) whether the witness has an interest in the outcome of the case or any motive, bias or prejudice;

(5) whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence;

(6) how reasonable the witness's testimony is when considered in the light of other evidence that you believe; and

(7) any other factors that bear on believability.

The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testify. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he or she gave at the trial.

**Authority:**  Third Circuit Model Jury Instructions (Civil) § 1.7; Fifth Circuit Pattern Jury Instructions § 2.16.

**HANOVER'S PROPOSED JURY INSTRUCTION NO. 3**

**CIRCUMSTANTIAL EVIDENCE**

There are two types of evidence that you may use in reaching your verdict. One type of evidence is called "direct evidence."  An example of "direct evidence" is when a witness testifies about something that the witness knows through his own senses — something the witness has seen, felt, touched or heard or did. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining. Another form of direct evidence is an exhibit where the fact to be proved is its existence or current condition.

The other type of evidence is circumstantial evidence.  "Circumstantial evidence" is proof of one or more facts from which you could find another fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

You should consider both kinds of evidence that are presented to you.  The law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

**Authority:**  Third Circuit Model Jury Instructions (Civil) § 1.6; Fifth Circuit Pattern Jury Instructions § 2.18.

**HANOVER'S PROPOSED JURY INSTRUCTION NO. 4**

**EXPERT WITNESSES**

In this case, I have permitted certain witnesses, which are called expert witnesses, to express their opinions about matters that are in issue.  A witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience and training.  Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing this opinion testimony, you may consider the witness's qualifications, his or her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony.  You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case.  You should not, however, accept opinion testimony merely because I allowed the witness to testify concerning his or her opinion.  Nor should you substitute it for your own reason, judgment and common sense.  The determination of the facts in this case rests solely with you.

To the extent that the testimony of expert witnesses for both sides in this case is in conflict, you must remember that you are the sole trier of the facts and their testimony relates to questions of fact, so it is your job to resolve the disagreement.

The way you resolve the conflict between these witnesses is the same way that you decide other fact questions and the same way you decide whether to believe ordinary witnesses. In addition, since they gave their opinions, you should consider the soundness of each opinion, reasons for the opinion and the witness' motive, if any, for testifying.

<u>**Authority:**</u>  Hon. Leonard B. Sand et al., 4 <u>Modern Federal Jury Instructions</u> (Civil) §§ 76-9 and 76-10.

**HANOVER'S PROPOSED JURY INSTRUCTION NO. 5**

**ROLE OF A RULE 30(b)(6) WITNESS**

Before this trial, the parties obtained binding testimony from each other through what are known as depositions of corporate representatives.  A deposition is the sworn, recorded answers to questions asked of a witness in advance of the trial.  The deposition of a corporate party is known as a corporate representative deposition.

When a party in a case wants to obtain binding testimony from a corporation, it sends to the corporation that is its adversary a list of the categories on which it is requesting testimony.  The corporation must then designate one or more witnesses to testify on its behalf with respect to the requested topics.

When a corporation designates a person as the voice of a corporation under this procedure, the law requires the corporate party to prepare its designee to give binding answers on its behalf.  In this type of deposition, there is no distinction between the corporate representative and the corporation.  The witness who is a corporate representative does not give his or her personal opinion, but rather presents the corporation's position on the topic.  The designee testifies on behalf of the corporation, and binds the corporation through his or her testimony.  A corporate party cannot make claims at trial that differ from those made by its designee at a corporate representative deposition.  Unless a corporation can prove that information was not available at the time of its corporate representative deposition, it cannot offer new or different testimony that could have been given at the time of the deposition.[1]

---

[1] *See Emmett Hyde v. Stanley Tools*, 107 F. Supp. 2d 992, 992-93 (E.D. La. 2000); *Super Futures Equities, Inc. v. Wells Fargo Bank Minnesota, N.A*., 2007 U.S. Dist. LEXIS 91947 (N.D. Tex. Dec. 14, 2007); *Rainey v. American Forest and Paper Association, Inc*., 26 F. Supp. 2d 82, 94-95 (D.D.C. 1998).

**HANOVER'S PROPOSED JURY INSTRUCTION NO. 6**

**BURDENS OF PROOF GENERALLY**

There are some issues in this case on which the Plaintiff bears the burden of proof, and some issues on which Hanover bears the burden of proof.  I will be instructing you in further detail about the issues on which the Plaintiff bears the burden of proof, and the issues on which Hanover bears the burden of proof.

Where one of the parties bears the burden of proof, it must meet that burden by a preponderance of the evidence.  A preponderance of the evidence simply means evidence that persuades you that the party's claim is more likely true than not true.  To say it differently:  if the Plaintiff bear the burden of proof on a particular issue, if you were to put the evidence favorable to the Plaintiff and the evidence favorable to the defendant on opposite sides of the scales, the Plaintiff would have to make the scales tip somewhat on their side.  If the Plaintiff bear the burden and fail to meet this burden, the verdict on that issue must be for the defendant.

In deciding whether any fact has been proven by a preponderance of the evidence, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You may have heard of the term "proof beyond a reasonable doubt."  That is a stricter standard of proof and it applies only to criminal cases.  It does not apply in civil cases such as this.  So you should put it out of your mind.

**Authority:**  Fifth Circuit Pattern Jury Instructions § 2.20.

## HANOVER'S PROPOSED JURY INSTRUCTION NO. 7

## BREACH OF CONTRACT (GENERALLY)

In this case, Plaintiff contends that Hanover breached its insurance contract with them and that they are owed more money by Hanover on their claim arising from Hurricane Katrina. HANOVER'S obligations to Plaintiff are governed by the terms of the insurance policy, which is a contract.  An insurance policy is a contract between the parties and has the effect of law between the parties.  The respective rights of the parties are determined by the provisions of the insurance contract, about which I will instruct you further.  Insurance companies are entitled to limit their liability in the insurance contract and impose and enforce reasonable conditions and limitations on the nature and extent of the obligations the insurer contractually assumes.

Plaintiff bears the burden of proving that Hanover breached the insurance contract.  In order to establish a breach of the insurance contract, Plaintiff must prove that Hanover undertook a specific obligation to them in the insurance policy, that Hanover failed to comply with that obligation, and that a specific amount of damages are owed under the insurance contract.  I will instruct you in further detail with respect to the provisions of the insurance policy and the parties' respective burdens of proof.

**Authority:**  Sher v. Lafayette Ins. Co., 988 So. 2d 186, 192-93 (La. 2008) (general principles regarding insurance contracts); Hinchee v. Soloco, L.L.C., 971 So. 2d 478, 484 (La. App. 3 Cir. 2007) ("A party alleging a breach of contract bears the burden of proving that breach."); Hanover Ins. Co. v. Reliable Home Health Care, Inc., 857 So. 2d 1039, 1041 (La. App. 4 Cir. Sept. 17, 2003) ("The burden of proof in an action for breach of contract is on the party claiming rights under the contract."); 1436 Jackson Joint Venture v. World Constr. Co., 499 So. 2d 426, 427 (La. App. 4 Cir. 1986) (in order to prove a breach of contract, the plaintiff must prove "that [the defendant] undertook an obligation to perform certain tasks, that [the defendant] breached that obligation and that the breach of contract resulted in damages to plaintiff").

**HANOVER'S PROPOSED JURY INSTRUCTION NO. 8**

**BURDEN OF PROOF – PROPERTY DAMAGE; COVERAGE AND EXCLUSIONS**

In a case involving insurance coverage, the insureds have the initial burden of proving that their claims fall within the grant of coverage in the policy.  With respect to damage to the Airline Drive building and its contents, under the insurance policy at issue in this case, Plaintiff must prove, by a preponderance of the evidence, that each item of property for which they are seeking to recover under the policy was "Covered Property," and that it sustained accidental direct physical loss or damage.  The term "Covered Property" includes the building located at 3331-35 St. Charles Avenue, New Orleans, Louisiana, and the "Business Personal Property" of Plaintiff located in or on that building.  The term "Business Personal Property" includes the furniture and fixtures of Plaintiff, its machinery and equipment, their "stock," and all other personal property owned by the Plaintiff and used in the business.  The term "stock" means "merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping."

If you find that Plaintiff has not proven, by a preponderance of the evidence, that particular items for which they are seeking to recover were "Covered Property," it has not met its burden of proof, and you must find in favor of Hanover with respect to those items of property. Similarly, if you find that Plaintiff has not proven, by a preponderance of the evidence, that particular items of property sustained direct physical loss or damage by an accidental cause, it has not met their burden of proof, and you must find in favor of Hanover with respect to those items of property.

If you find that Plaintiff has established, by a preponderance of the evidence, that items of their property both constituted "Covered Property" and sustained accidental direct physical

587930-1

10

loss or damage, you must then proceed further to consider whether any of the exclusions that Hanover is relying on apply.

Hanover bears the burden of proving that an exclusion applies, by a preponderance of the evidence.  If you find that Hanover has presented evidence demonstrating, by a preponderance of the evidence, that some or all of the Plaintiff's losses were caused by an excluded peril, Hanover has met its burden of proof.

The burden then shifts back to Plaintiff to show either that its losses do not fall within the exclusion or, alternatively, to segregate the amount of their covered losses from excluded losses. Plaintiff must prove the amount of segregable damage caused by a covered peril.  If you find that Hanover has demonstrated that the Plaintiff's losses were caused by an excluded peril, and that the Plaintiff  has not met its burden of showing either that its losses do not fall within the exclusion, or segregating the amount of their covered losses from excluded losses, then you must find in favor of Hanover.  If you find that Plaintiff has met its burden, then you should find in favor of Plaintiff only with respect to those items of property for which it has proven that its losses do not fall within the exclusion, or for which it has segregated the amount of its covered losses from the excluded losses.

In this case, Plaintiff is claiming that it sustained damage to the Airline Drive building and multiple items of contents within that building. Plaintiff retains the burden of proving that the items claimed sustained direct physical loss or damage by an accidental cause, and retains the burden of proving, by a preponderance of the evidence, the value of that property.  If you find that Plaintiff has met this burden, Hanover has the burden of proving, by a preponderance of the evidence, that some or all of the claimed loss was caused by an excluded cause of loss.  If you find that Hanover has proven that some or all of the claimed loss was caused by these excluded

causes, then Plaintiff has the burden of proving what specific items of property were damaged by a covered cause of loss (here, wind or wind-driven rain).

**Authority:**  Hyatt v. State Farm Ins. Co., 2008 WL 544182, at *2 (E.D. La. Feb. 25, 2008) (Vance, J.); Broussard v. State Farm Fire & Cas. Co., 2007 WL 2264535, at *2 (E.D. La. Aug. 2, 2007) (Vance, J.); Duplessy v. Lexington Ins. Co., Civ. A. No. 07-8816, slip op. at 7 (E.D. La. June 17, 2009) (Feldman, J.); Nunez v. Standard Fire Ins. Co., 2009 WL 799756, at *2-3 (E.D. La. Mar. 24, 2009) (Feldman, J.); Copelin v. State Farm Ins., 2009 WL 361088, at *6 (E.D. La. Feb. 12, 2009) (Lemelle, J.); Weiser v. Horace Mann Ins. Co., Civ. A. No. 06-9080, slip op. at 8 n.21 (E.D. La. Apr. 6, 2009) (Africk, J.); Williams v. Allstate Ins. Co., 2008 WL 5110604, at *2 (E.D. La. Nov. 26, 2008) (McNamara, J.); Moffett v. Allstate Ins. Co., 2008 WL 5082902, at *3 (E.D. La. Nov. 25, 2008) (Lemmon, J.); Bayle v. Allstate Ins. Co., 2008 WL 5054572 (E.D. La. Nov. 21, 2008) (McNamara, J.); Williams v. State Farm Fire & Cas. Co., 2008 WL 4890182, at *1 (E.D. La. Nov. 4, 2008) (Engelhardt, J.); Ace American Ins. Co. v. Administrators of Tulane Educ. Fund, 2008 WL 4091013, at *3 (E.D. La. Aug. 27, 2008) (Lemelle, J.); Perrien v. State Farm Ins. Co., 2008 WL 2705455, at *2-3 (E.D. La. July 9, 2008) (Duval, J.); Johnson v. ZC Sterling Ins. Agency, Inc., 2007 WL 4553981, at *2 (E.D. La. Dec. 20, 2007) (Barbier, J.); Ferguson v. State Farm Fire & Cas. Co., 2007 WL 1378507, at *1 (E.D. La. May 9, 2007) (Berrigan, J.); Jones v. Estate of Santiago, 870 So. 2d 1002 (La. 2004); Waldrip v. L.Y., 954 So. 2d 856 (La. App. 2 Cir. 2007); Swindle v. Maryland Cas. Co., 251 So. 2d 787, 791 (La. App. 1 Cir. 1971); 12 Couch on Insurance § 175:9 (3d ed. 2006) ("It is the insured's burden to produce evidence that would afford a reasonable basis for estimating the amount of damage or the proportionate part of damage caused by the covered peril and that by the excluded peril."); Fiess v. State Farm Lloyds, 392 F.3d 802, 807 (5th Cir. 2004) (holding that, under Texas law, "the insured bears the burden of presenting evidence that will allow the trier of fact to segregate covered losses from non-covered losses").

## HANOVER'S PROPOSED JURY INSTRUCTION NO. 12

## POLICY CONDITIONS

The insurance policy issued by Hanover to Plaintiff contains various conditions that the Plaintiff was required to comply with in the event of loss or damage, in order to present their insurance claim to Hanover and substantiate its claim.  The Plaintiff also owed a general duty of good faith to Hanover.  The policy specifically requires that the Plaintiff provide prompt notice of the loss or damage and, as soon as possible, give Hanover an accurate description of how, when and where the loss or damage occurred.  The policy also requires that the Plaintiff provide, at Hanover's request, complete inventories of the damaged and undamaged property, including quantities, costs, values and amounts of loss claimed.  The policy also requires that the Plaintiff, as often as may reasonably be required, permit Hanover to inspect the property and records proving the loss or damage and examine the Plaintiff's books and records.  The Plaintiff must allow Hanover to take samples of damaged and undamaged property for inspection, testing and analysis, and must allow Hanover to make copies from their books and records.  The Plaintiff must cooperate with Hanover in its investigation or settlement of the claim.

Plaintiff's compliance with these provisions is a condition to their recovery under the policy and if you find that they materially failed to comply with their obligations you must render a verdict in favor of Hanover.

An additional condition is that Plaintiff must not misrepresent any material fact concerning the covered property or the insurance claim, or otherwise file a fraudulent claim. Coverage is void, and Plaintiff is not entitled to any recovery, if any Plaintiff named insured intentionally misrepresents a material fact concerning the covered property or the insurance claim, or otherwise files a fraudulent claim.  A material fact is one that significantly affects the

rights or obligations of the insurer.  An insurance company is not required to prove that it relied

on the misrepresentation.

**Authority:**  Policy, Businessowners Special Property Coverage Form, at HANO-00151-00273; National Union Fire Ins. Co. v. Cagle, 68 F.3d 905, 912 (5th Cir. 1995) (explaining that, under Louisiana law, "the insured owes the insurer the duty of complying with the contract terms together with a general duty of performance in good faith"); Le Blanc v. Davis, 223 So. 2d 862, 864 (La. 1969) (holding that insured's compliance with duties under insurance policy is a condition precedent to recovery); Lee v. United Fire & Casualty Co., 607 So. 2d 685, 688 (La. App. 4 Cir. 1992) ("Courts have generally reviewed compliance with insurance policy provisions as a condition precedent to recovery.  Hence, the failure of an insured to cooperate with the insurer has been held to be a material breach of the contract and a defense to a suit on the policy. This is so whether the failure to cooperate is manifested by a refusal to submit to an examination under oath, or a refusal to produce documents.") (citations omitted); Mosadegh v. State Farm Fire & Cas. Co., 2008 U.S. Dist. LEXIS 79124, at *9 (E.D. La. Oct. 8, 2008) (Feldman, J.) ("Compliance with insurance policy provisions are conditions precedent to recovery under that policy, which must be fulfilled before an insured may proceed with a lawsuit."), aff'd, 2009 U.S. App. LEXIS 10549 (5th Cir. May 15, 2009) (per curiam) (unpublished); MAMCO, Inc. v. American Employers Ins. Co., 736 F.2d 187, 190 & n.6 (5th Cir. 1984) (explaining that a misrepresentation is material if it "significantly affects the rights or obligations of the insurer"; further explaining that "there is rarely direct evidence of intent to deceive" and "[s]uch intent, therefore, must often be inferred from circumstances that create a reasonable assumption that the claimant was aware of the falsity of his representations"); Williams v. United Fire & Casualty Co., 594 So. 2d 455, 459 (La. App. 1 Cir. 1991) ("We find nothing in the statutes and the jurisprudence which requires detrimental reliance by the insurer in order for the insurer to avail itself of [a misrepresentation] defense.").

**HANOVER'S PROPOSED JURY INSTRUCTION NO. 13**

**COVERAGE CANNOT BE CREATED BY WAIVER OR ESTOPPEL**

You have heard evidence in this case that Hanover made certain payments to the Plaintiff during the course of its investigation of the Plaintiff's insurance claim, and that the payments may have been allocated, formally or informally, to certain categories of the Plaintiff's insurance claim. The fact that Hanover made these payments does not mean that there is coverage under the insurance policy for any particular factual scenario. Hanover cannot enlarge or expand the scope of coverage provided for in the insurance policy by making payments on the insurance claim. You must decide whether there is coverage under the insurance policy, and, if so, to what extent, based solely on the provisions of the policy, as I have explained them to you, and the facts that have been introduced into evidence at this trial. In deciding whether there is coverage and, if so, to what extent, you may not take into consideration the payments made by Hanover.

**Authority:** Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co., 352 F.3d 254, 271 (5th Cir. La. 2003) (holding that "an insurer does not, by virtue of making a payment on a claim, waive the right to assert coverage defenses to a subsequent claim," and "Louisiana's intermediate appellate courts have relied on these articles in holding that an insurer's erroneous, or even negligent, payment of a claim to its insured does not bar the insurer from later recouping the amount paid"; "even if [the insurer's] payment . . . were made knowingly, such knowing payment would not waive its right to reclaim that amount"); Gulf Fleet Marine Operations, Inc. v. Wartsila Power, Inc., 797 F.2d 257, 261 (5th Cir. 1986) ("Under Louisiana law, the application of the doctrine of estoppel cannot be used to extend or enlarge coverage beyond that set forth in the policy."); Rozas v. La. Hosp. Serv., Inc., 413 So. 2d 364, 368-69 (La. App. 3 Cir. 1982) (holding that payment made by insurer did not estop insurer from denying coverage because "equitable estoppel cannot be used to enlarge or extend coverage for an insurance policy beyond that set forth in the insurance agreement"); Monju v. Continental Cas. Co., 487 So. 2d 729, 732 (La. App. 5 Cir. 1986) (holding that the fact that insurer paid one claim did not bar it from asserting that it was not liable for other similar claims); Smith v. Republic Nat'l Life Ins. Co., 335 So. 2d 739, 741 (La. App. 2 Cir.), cert. denied, 338 So. 2d 706 (La. 1976) ("The general rule in most jurisdictions is that equitable estoppel cannot be used to enlarge or extend coverage beyond that set forth in the policy. Our courts follow this general rule. We hold the representations of an insurance company's agent cannot be used to extend the insurance coverage beyond that provided in the policy."); Sims v. Liberty Mutual Ins. Co., 897 So.2d 834,

851 (La. App. 3d Cir. 2005) ("The rules of waiver and estoppel cannot be used to expand coverage that is specifically and unambiguously excluded by the policy language.  The position is strongly favored since to extend coverage through the use of the doctrine of waiver or estoppel will essentially rewrite the contract entered into by the parties.") (quoting 2 Eric Mills Holmes, et al., Appleman on Insurance, 2d § 8.1, at 302 (1996)).

## HANOVER'S PROPOSED JURY INSTRUCTION NO. 17

## PERIOD OF RESTORATION

Coverage for Business Income applies only during the applicable period of restoration.[2] The period of restoration is the theoretical amount of time it would take to repair or replace the lost or damaged property with reasonable speed and similar quality. Plaintiff may not recover for any claimed Business Income for any period beyond the hypothetical period of time it should have taken to repair wind and rain related damage at their locations with reasonable speed and similar quality.

The period of restoration does not include any delays not associated with Hanover's fault. Delays associated with the Plaintiff's business decisions not to reopen or to delay reopening its business due to poor market conditions, actions of landlords, or contractor negligence are not included in the period of restoration.[3]

---

[2] *See* Hanover Policy at HANO-00151-00273.
[3] *See* Hanover Policy; *Rogers v. American Insurance Co.*, 338 F.2d 240 (8th Cir. 1964); *Congress Bar and Restaurant v. Transamerica*, 165 N.W. 2d 409 (Wis. 1969); *see also Courtenay , Hunter & Fontana, LLP v. Massachusetts Bay Ins. Co.*, 2008 U.S. Dist. LEXIS 63650 (E.D. La. Aug. 19, 2008) (holding coverage not available during entire period of restoration where insured had resumed operations earlier).

## HANOVER'S PROPOSED JURY INSTRUCTION NO. 18

## DAMAGES – BREACH OF CONTRACT

If the Plaintiff has proven its claims against the defendant by a preponderance of the evidence, you must determine the damages to which the Plaintiff is entitled.  You should not interpret the fact that I have given instructions about the Plaintiff's damages as an indication in any way that I believe that the Plaintiff should, or should not, win this case.  It is your task first to decide whether the defendant is liable.  I am instructing you on damages only so that you will have guidance in the event you decide that the defendant is liable and that the plaintiff is entitled to recover money from the defendant.[4]

If you find that the defendant is liable, you should award the amount you find by a preponderance of the evidence is due under the insurance policy, after taking into account the total amount previously paid by Hanover.  The Plaintiff bears the burden of proving every item of its damages with legal certainty, by competent evidence.  Such damages cannot be based on speculation, for it is only actual damages that are recoverable.  If you award damages, you may not include in your award any "damages that are speculative, damages that are only possible or damages that are based on guesswork."[5]

On Plaintiff's breach of contract claim, the law does not permit you to award any damages except those that you find are due under the terms of the insurance policy.  You may not award damages in this case for emotional distress, pain and suffering or any other type of damages.  I will instruct you separately with respect to the Plaintiff's bad faith claims.

**Authority:**  Fifth Circuit Pattern Jury Instructions §§ 4.8, 9.11, 15.1; Gulf Coast Real Estate Auction Co. v. Chevron Indus., Inc., 665 F.2d 574, 577 (5th Cir. 1982) ("[a] jury may not rest its verdict on speculation and conjecture"); Coastal Plains Feeders, Inc. v. Hartford Fire Ins. Co.,

---

[4] Fifth Circuit Pattern Jury Instructions § 15.1.
[5] Fifth Circuit Pattern Jury Instructions § 9.11.

545 F.2d 448, 453 (5th Cir. 1977) (holding that insured "bore the burden of proving the amount of its damages" and "the jury could not be left free to speculate as to this amount"); <u>Hargroder v. Protective Life Ins. Co.</u>, 556 So. 2d 991, 997 (La. App. 3 Cir. 1990) ("It is plaintiff's burden to prove with legal certainty every item of the damages claimed. This burden must be borne by competent evidence showing the extent of the damage and plaintiff's own uncorroborated estimate of the value of the loss is insufficient.").

**HANOVER'S PROPOSED JURY INSTRUCTION NO. 19**

**MEASURE OF LOSS – PROPERTY DAMAGE**

The insurance policy issued by Hanover to Plaintiff provides that, with respect to property damage that is covered by the policy, Hanover has the option of either paying the value of the lost or damaged property, or paying the cost of repairing or replacing the lost or damaged property.  The policy only requires Hanover to pay the actual cash value at the time of the loss or damage until the property is repaired or replaced within a reasonable period of time.  The term "actual cash value" is often defined as the replacement cost less depreciation.  Depreciation takes into account the decline in an asset's value because of age, use, wear, or obsolescence.  If you determine that Hanover withheld a reasonable amount for depreciation until the Plaintiff completed the repairs to its property, that would not constitute a breach of contract. Hanover was not required to pay the full cost of replacement until the item of property in issue was actually repaired or replaced.

After repair or replacement is completed, the insurance policy provides that Hanover is required to pay the <u>least</u> of the following amounts:  (1) the applicable limit of insurance; (2) the cost to replace, at the same location, the lost or damaged property with other property of comparable material and quality and used for the same purpose; or (3) the amount that the Plaintiff actually spent that was necessary to repair or replace the lost or damaged property.

<u>**Authority:**</u>  Policy, Businessowner's Special Deluxe Property Coverage Form, at HANO-00151-00273; <u>Pontchartrain Gardens, Inc. v. State Farm Gen. Ins. Co.</u>, 2009 U.S. Dist. LEXIS 3734, at *19-21 (E.D. La. Jan. 13, 2009) (Vance, J.) (explaining that "[a]ctual cash value is equal to the replacement cost value minus depreciation," and that, under similar policy provision, insured was only entitled to recover actual cash value until repair or replacement was complete); <u>Hackman v. EMC Ins. Co.</u>, 984 So. 2d 139, 143 (La. App. 5 Cir. 2008) (explaining that "until the repairs are actually made, [the insurer] owes only the actual cash value"); BLACK'S LAW DICTIONARY 473 (8th ed. 2004) (depreciation is "[a] decline in an asset's value because of use, wear, or obsolescence").

## HANOVER'S PROPOSED JURY INSTRUCTION NO. 20

## DETERMINATION OF THE AMOUNT OF LOSS AS A WHOLE

In your determination of whether Hanover breached the insurance contract, you must evaluate the loss as a whole and determine whether the total amount paid by Hanover was sufficient to fulfill Hanover's obligations under the policy as I have outlined those obligations to you.  Hanover is not bound by any estimate that it prepared or any allocation that it made with respect to its prior payments.  If you find that, during the adjustment process, Hanover overpaid one part of the claim but underpaid another, you must compare the total amount paid by Hanover to the total amount that you find was owed under the policy.  If you find that the total amount paid by Hanover was equal to or more than the total amount that you determine was owed under the policy, you must enter a verdict in favor of Hanover.  You may find a breach of contract only if you find that the total amount paid by Hanover was less than the total amount that you determine was owed under the policy.  In that event, your award of damages for breach of contract should be calculated as the total amount owed minus the total amount paid.

**Authority:**  Nguyen v. St. Paul Hanover Ins. Co., 2008 WL 4691685, at *5, 7-8 (E.D. La. Oct. 22, 2008) (Vance, J.) (explaining that an insurer is not "bound to its pre-litigation estimate" or "foreclosed from attempting to show that the amount it paid each insured was reasonable"; "[i]nsurers develop estimates to reflect a total number that is supposed to represent the reasonable cost to repair or replaced the insured's damaged property," and an insurer "is entitled to show that it fulfilled its contractual obligation" based on the total amount paid; "the issue is whether the total amount paid, not just a discrete, uniformly applicable component of that payment, was sufficient to satisfy [the insurer's] contractual obligation"; the question is "whether or not the bottom-line dollar amount [the insurer] paid [to the] insured was sufficient").

## HANOVER'S PROPOSED JURY INSTRUCTION NO. 21

## MITIGATION OF DAMAGES

The insurance policy requires that, in the event of loss or damage to covered property, the Plaintiff must take all reasonable steps to protect the Covered Property from further damage. Independent of the requirement of the insurance policy, a person who claims damages resulting from the wrongful act of another has a duty under the law to use reasonable diligence to mitigate—to avoid or minimize those damages.

If you find the defendant is liable and the Plaintiff has suffered damages, the plaintiff may not recover for any item of damage which they could have avoided through reasonable effort.  If you find by a preponderance of the evidence the Plaintiff unreasonably failed to take advantage of an opportunity to lessen their damages, you should deny them recovery for those damages which they would have avoided had they taken advantage of the opportunity.

**Authority:**  Fifth Circuit Pattern Jury Instructions § 15.15.

**HANOVER'S PROPOSED JURY INSTRUCTION NO. 23**

**LOUISIANA REVISED STATUTE 22:1892 (formerly 22:658)**

The Plaintiff in this case is making claims for insurance bad faith under Louisiana Revised Statute 22:1892.  Hanover denies that it violated this statute.  As an initial matter, if you find in favor of Hanover on the Plaintiff's claims for breach of contract, then you should enter a verdict in favor of Hanover and need not consider the Plaintiff's bad faith claims.  If, however, you find in favor of the Plaintiff with respect to its claim for breach of contract, you will need to proceed further to consider that plaintiff's claim for insurance bad faith.

The Louisiana bad faith law applicable in this case provides that a property insurance company "shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured . . . ."  The insurer's failure to make such payment within thirty days after receipt of such satisfactory written proofs of loss, when such failure is found to be arbitrary, capricious, or without probable cause, will subject the insurer to a penalty of 25% of the difference between the amount paid or tendered and the amount found to be due.

In order to recover penalties, a plaintiff has the burden of proving three things.  First, the plaintiff must prove that it provided satisfactory written proofs of loss with respect to the portion of its claim for which it is seeking to recover penalties.  A satisfactory proof of loss is defined by Louisiana law as information "which is sufficient to *fully* apprise the insurer of the insured's claim."[6]  In order to be sufficient, the proof of loss must establish the extent of the damage.  An insurer does not have a "satisfactory proof of loss" until it has obtained the documentation it requested from the insured, and has "the opportunity to verify [the insured's] claims to at least a

---

[6] <u>Block v. St. Paul Fire & Marine Ins. Co.</u>, 742 So. 2d 746, 752 (La. App. 2 Cir. 1999) (emphasis in original); <u>see also</u> <u>La. Bag Co. v. Audubon Indem. Co.</u>, 999 So. 2d 1104, 1119 (La. 2008); <u>Reed v. State Farm Mut. Auto. Ins. Co.</u>, 857 So. 2d 1012, 1022 (La. 2003).

reasonable degree of satisfaction."[7]  An insurer does not violate Louisiana law by conducting a careful investigation, even if it is an "overly cautious" one.[8]  If you find that the plaintiff failed to meet its burden of proving that they provided a satisfactory proof of loss with respect to any portion of their claim, you may not award penalties with respect to that portion of the plaintiff's claim.

If you find that the plaintiff failed to provide information required by Hanover to evaluate its claim, you must find in favor of Hanover on that plaintiff's bad faith claim.  "[A]n insured who fails to provide his insurer with information required to process his claim cannot then claim the insurer acted arbitrarily in delaying payment."[9]

Second, the plaintiff must prove that Hanover failed to pay the amount due within 30 days after receiving satisfactory proofs of loss.  If you find that the plaintiff has not proven, with respect to any portion of its claim, that Hanover failed to pay that portion of the claim within 30 days after receiving satisfactory proofs of loss, you may not award penalties with respect to that portion of the claim.

Third, the plaintiff must prove that Hanover's failure to pay was arbitrary, capricious or without probable cause.  "The phrase 'arbitrary, capricious, or without probable cause' is synonymous with 'vexatious,' and a 'vexatious refusal to pay' means 'unjustified, without reasonable or probable cause or excuse.'"[10]  The plaintiff must prove that Hanover's conduct was "more than mere bad judgment or negligence," and evidenced "a dishonest purpose or evil intent."[11]  Hanover's actions must be evaluated based on the facts known to Hanover at the time of its actions, not based on facts that Hanover learned at a later point in time.  An insurer does

---

[7] Block, 742 So. 2d at 753.
[8] Id.
[9] Dickerson v. Lexington Ins. Co., 556 F.3d 290, 299 (5th Cir. 2009).
[10] La. Bag Co., 999 So. 2d at 1114; Dickerson, 556 F.3d at 297.
[11] Combetta v. Ordoyne, 934 So. 2d 836, 842 (La. App. 1 Cir. 2006).

not violate Louisiana bad faith law "when the insurer has a reasonable basis to defend the claim

and acts in good-faith reliance on that defense."[12]   You may not award penalties if you find that

there was a "reasonable and legitimate question as to the extent and causation of a claim," or that

there were "substantial, reasonable and legitimate questions as to the extent of [the] insurer's

liability or [the] insured's loss . . . ."[13]   "An insurer does not act arbitrarily and capriciously . . .

when it withholds payment based on a genuine (good faith) dispute about the amount of a loss or

the applicability of coverage."[14]   If you conclude that reasonable minds could differ over whether

payment was owed or how much was owed, you may not award penalties.   If you find that the

plaintiff has not proven that Hanover's failure to make payment was arbitrary, capricious or

without probable cause, then you may not award penalties.

      You may award penalties to a particular plaintiff only if Plaintiff has met its burden of

proving that it provided a satisfactory proof of loss and that payment of its claim for its covered

damages was delayed for more than 30 days arbitrarily, capriciously or without probable cause.

In order to recover for bad faith, plaintiff must prove that its claim was handled in bad faith, and

plaintiff must prove each of the three elements of a bad faith claim, as I have outlined above.   If

you award penalties to a plaintiff, such penalties are calculated as 25% of the difference between

the amount paid or tendered and the amount found to be due to that plaintiff.   You may not

award penalties on amounts that you find were timely paid.

**Authority:**   La. Rev. Stat. 22:658 (2005); La. Bag Co. v. Audubon Indem. Co., 999 So. 2d 1104,
1114 (La. 2008); Dickerson v. Lexington Ins. Co., 556 F.3d 290, 297 (5th Cir. 2009); Sher v.
Lafayette Ins. Co., 988 So. 2d 186, 199-201 (La. 2008) (holding that 2006 amendment is not
retroactive, and applies prospectively only if the insured "discovered new damage and made
satisfactory proof which [the insurer] failed to pay" after August 15, 2006; the 2006 amendment

---

[12] La. Bag Co., 999 So. 2d at 1114.
[13] Id.
[14] Dickerson, 556 F.3d at 297-98.

is inapplicable to this case); <u>Clausen v. Fidelity & Deposit Co.</u>, 660 So. 2d 83, 85 (La. App. 1 Cir. 1995) (holding that "[t]he penalties authorized by these statutes [La. R.S. 22:658 and 22:1220] do not stand alone" and that "a plaintiff attempting to base her theory of recovery against an insurer on these statutes must first have a valid, underlying, substantive claim upon which insurance coverage is based"); <u>Talton v. USAA Cas. Ins. Co.</u>, 981 So. 2d 696, 708 (La. App. 4 Cir. 2008) (plaintiff bears burden of proof); <u>Patin v. Imperial Lloyds Ins. Co.</u>, 670 So. 2d 238, 243 (La. App. 3 Cir. 1996) (plaintiff bears burden of proof); <u>Block v. St. Paul Fire & Marine Ins. Co.</u>, 742 So. 2d 746, 752 (La. App. 2 Cir. 1999) (satisfactory proof of loss); <u>Reed v. State Farm Mut. Auto. Ins. Co.</u>, 857 So. 2d 1012, 1022 (La. 2003) (satisfactory proof of loss); <u>Boudreaux v. State Farm Mut. Auto. Ins. Co.</u>, 896 So. 2d 230, 234 (La. App. 4 Cir. 2005) (recognizing that the insured's proof of loss, in order to be sufficient, must "establish the extent of [the] damages"; insurer did not receive satisfactory proof of loss until insured had provided all requested documentation); <u>Broussard v. National Union Fire Ins. Co.</u>, 653 So. 2d 816, 818 (La. App. 3 Cir. 1995) ("National Union's dispute of Ms. Broussard's claim for additional living expenses was not arbitrary or capricious. Her policy required documentation, and the insurance company withheld payment pending further documentation."); <u>Johnson v. Phillips</u>, 544 So. 2d 600, 604 (La. App. 1 Cir. 1989) (affirming trial court ruling that there was no violation of Section 22:658 where insured failed to timely provide documentation to substantiate claim and insurer's "claim representatives made sufficient numerous good faith attempts in procuring the necessary documentation and reports"); <u>Fleming v. American Auto. Ass'n</u>, 764 So. 2d 274, 284 (La. App. 4 Cir. 2000) (affirming verdict finding no bad faith violation because "Plaintiff was remiss in failing to timely provide adequate information for [the insurer] to make its necessary evaluations of her claim"); <u>Lewis v. State Farm Ins. Co.</u>, 946 So. 2d 708, 725 (La. App. 2 Cir. 2006) (meaning of arbitrary, capricious or without probable cause); <u>Combetta v. Ordoyne</u>, 934 So. 2d 836, 842 (La. App. 1 Cir. 2006) (meaning of arbitrary, capricious or without probable cause); <u>Fielding v. MTL Ins. Co.</u>, 2003 U.S. Dist. LEXIS 12893, at *10 (E.D. La. July 25, 2003) (Fallon, J.) (holding that each plaintiff's claim for penalties under the Louisiana bad faith statutes must be evaluated separately).

## HANOVER'S PROPOSED JURY INSTRUCTION NO. 24

### DEDUCTIBLES

As I have already instructed you, insurance policies like the one that Hanover issued to the Plaintiff in this case typically coves certain types of losses and exclude others.  Even when a loss is covered, however, the amount of money that the insurer is obligated to pay is restricted by provisions in the policy known as deductibles, limits and sublimits.

I will now explain to you what these terms mean and how to apply them in this case.  I must reiterate, however, that by instructing you as to the deductibles, limits and sublimits that could apply, I am not meaning to suggest that you should find that Hanover is liable.  Rather, I am merely instructing you how to apply these provisions if and only if you first determine that there is a covered loss that exceeds the amounts previously paid by Hanover.

A deductible is "the portion of the loss to be borne by the insured," the Plaintiff, before Hanover "becomes liable for payment."[15]  Hanover is not required to pay for covered losses unless and until the amount of the loss exceeds the applicable deductible.  Under the policy in this case, there are separate deductibles that apply to the different types of coverage that Hanover provided to Plaintiff.  Here are the deductibles that you must apply if you find liability is $1,000.

To apply the deductible I have just described for you, you must first calculate the total covered loss, if any, that the Plaintiff sustained in each of these categories.  Then, you must subtract from each of these amounts the appropriate deductible.

---

[15]  Black's Law Dictionary 422 (7th ed. 1999).

## HANOVER'S PROPOSED JURY INSTRUCTION NO. 25

## LIMITS AND SUBLIMITS

If you determine that there is a covered loss, there are certain limits in the policy on the maximum dollar amount that Hanover will pay for a covered loss.  The term "limits" refers to the maximum amount that Hanover is required pay for a particular type of covered loss or a loss at a particular location.

There are several limits that could apply in this case if you were to find that there is a covered loss that exceeds the total amount previously paid by Hanover.  A few are worthy of discussion here.

The policy does not cover damage to the building, although certain tenant improvements are covered if they are the responsibility of the tenant under the terms of the lease.

With respect to covered damage to business personal property, the applicable limit of insurance is $275,625.  [HANO_____.]

With respect to other coverage limits that may apply:

Tenant glass $20,000

Tenant signs $25,000

Utility services direct damage $50,000

Utility services business income $25,000

Debris removal $25,000

[HANO 00_____ - _____.]

Dated this 5th day of October, 2009.

Respectfully submitted,

_s/Simeon B. Reimonenq, Jr._
SIMEON B. REIMONENQ, JR., T.A, #19755
REED S. MINKIN, #28687
JASON P. FRANCO, #30187
SETH A. SCHMEECKLE, #27076
**LUGENBUHL, WHEATON, PECK,**
**RANKIN & HUBBARD**
601 Poydras Street, Suite 2775
New Orleans, Louisiana 70130
Telephone:     (504) 568-1990
Facsimile:     (504) 310-9195
Attorneys for The Hanover Insurance Company,
incorrectly denominated as Hanover Insurance
Company

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all counsel of record by electronic notice from the Court's CM/ECF Filing System, this 5th day of October, 2009.

_s/Simeon B. Reimonenq, Jr._
Simeon B. Reimonenq, Jr.